UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARRY WALLACE FULLER, | § | |
| TDCJ #01956450, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-17-1959 |
| | § | |
| LORIE  DAVIS, | § | |
| | § | |
| Respondent. | | |

## MEMORANDUM AND ORDER

Petitioner Garry Wallace Fuller (TDCJ #01956450), a state inmate, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for sexual assault of a child.  Docket Entry No. 1 ("Petition").  Respondent has filed a Motion for Summary Judgment (Docket Entry No. 10), to which Petitioner has filed a response (Docket Entry No. 14). After considering all of the pleadings, the record, and the applicable law, the Court will grant Respondent's motion for summary judgment and dismiss this habeas petition.

## I.    PROCEDURAL HISTORY

Petitioner Garry Wallace Fuller ("Fuller") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) as a result of two 2014 convictions for sexual assault of a child.[1]  Fuller entered pleas of not guilty and proceeded to trial in the 338th District Court of Harris County, Texas in cause numbers 1379141 and 1413756. [2]  A jury found Fuller guilty of both charges of sexual assault of a child and the court sentenced him

---

[1] *See* Petition at 2.

[2] *Id.*

to life in prison in both cases on September 18, 2014.[3]

A state intermediate court of appeals affirmed Fuller's convictions. *See Fuller v. State*, Nos. 01-14-00796-CR and 01-14-00797-CR, 2016 WL 1267912 (Tex. App.—Houston [1st Dist.] Mar. 31, 2016, pet. ref'd) (mem. op.). The Texas Court of Criminal Appeals refused discretionary review on June 29, 2016. *Fuller v. State*, Nos. PD-0415-16 and PD-0416-16 (Tex. Crim. App. 2016). On January 30, 2017, and March 13, 2017, respectively, Fuller filed state habeas applications challenging each of his convictions, and the Texas Court of Criminal Appeals adopted the findings of the trial court and denied each the state habeas applications without written order.[4] *See Ex parte Fuller*, WR-86,342-01 (Tex. Crim. App. Mar. 8, 2017), at Action Taken Sheet (Docket Entry No. 11-35); *Ex parte Fuller*, WR-86,342-02 (Tex. Crim. App. Apr. 5, 2017), at Action Taken Sheet (Docket Entry No. 11-38). This federal petition followed.

## II.    FACTUAL BACKGROUND

The state intermediate court of appeals affirmed the conviction after summarizing the evidence at trial, as follows:

> A grand jury indicted Fuller for two separate offenses of sexual assault of a child, one for performing oral sex on his then 16–year–old stepdaughter and the other for having intercourse with her. *See* Tex. Penal Code Ann. § 22.011(a)(2)(A), (C) (West 2011). He pleaded not guilty to both offenses.
>
> *Jury Selection*
>
> Over the objection that the question asked for an improper commitment, the trial court allowed the prosecutor to ask prospective jurors: "How likely do you think a child would be to lie about being sexually abused?" The prosecutor asked the members of the venire to answer this question on a scale of one to four, with one indicating "very likely," two "likely," three "unlikely," and four "very unlikely." Almost all of the prospective jurors answered "three" or "four."

---

[3] *Id*. at 2-3.

[4] *Id*. at 3.

During her opening statement, the prosecutor told the jury that the proof would show that Fuller had sexually abused his stepdaughter for many years and that this prolonged abuse culminated in the complainant videotaping the two offenses for which Fuller was on trial. The prosecutor stated that she was "very sorry" that jurors were "going to have to see that video." Defense counsel objected to this remark, and the trial court sustained the objection. The trial court also instructed the jury to disregard the prosecutor's apology, but denied the defense's motion for a mistrial. The prosecutor then resumed her opening statement, arguing that "the video is offensive and degrading" and would show that Fuller did not care about his stepdaughter or how she feels. Defense counsel again objected, and the trial court sustained the objection. Defense counsel did not request an instruction to disregard or move for a mistrial after this ruling.

During his opening statement, defense counsel conceded that the video was "going to be tough to watch." But he argued that the proof would show that the videotaped acts were consensual and "one isolated incident." He also told the jury that the complainant had falsely accused Fuller of sexually abusing her before and this accusation was investigated and discredited.

*2 The complainant testified that Fuller began abusing her at the age of seven when they lived in California. She testified that he touched her vagina and chest both above and under her clothing in her room every other day. The complainant explained that, sometime before she began middle school, Fuller began taking her to motels, where he would show her pornographic videos, touch her vagina and chest, and try to have intercourse with her. She stated that Fuller told her that he was teaching her how to have sex. She testified that when she was in middle school Fuller began having sexual intercourse and engaging in oral sex with her. She stated that these encounters occurred in the living room of the family's home in the early morning hours before her mother or siblings were awake.

The complainant testified that she was scared, but eventually informed two counselors at her middle school about the abuse. She stated that child protective services and law enforcement authorities investigated her accusation. But when interviewed at a police station, the complainant testified that she did not tell authorities what was occurring because she was afraid. She stated she was removed from the home and placed in foster care for a year and a half, and then returned to her home because the authorities did not believe her accusation. She and her family subsequently moved to Houston, where Fuller's sexual abuse resumed.

The complainant testified that Fuller would enter her room when the rest of her family was asleep and have intercourse with her. She stated that she began feeling she no longer wished to live and testified about some social media postings in which she expressed these suicidal thoughts. Over a relevance objection, the trial court admitted three of these social media postings, in which the complainant said she was amazed at how little anyone cared, would kill herself if no pain or blood were involved and her family would not be hurt by her actions, and she had ceased caring.

The complainant testified that one night in Houston Fuller came into her room, touched her, and then left. She thought he might return, so she set up her laptop computer camera to record anything that might happen to obtain proof of the abuse. The complainant testified that Fuller did return. He came to her bed, took off her pants, performed oral sex on her, and then put on a condom and had sexual intercourse with her. She stated that she sometimes fought his advances, but did not do so this time because she knew Fuller would not be able to deny the acts given that they were videotaped. The video itself was admitted into evidence and played for the jury.

The complainant testified that she was anxious about whether the video would be proof enough to substantiate her claims. But several weeks or as much as a month later she informed Lindsey Parrish, a counselor at her high school, about the abuse. The complainant testified that Parrish in turn informed child protective services.

On cross-examination, the defense sought to show that the complainant's testimony about the duration of the abuse was false. The complainant acknowledged that she told no one about the alleged sexual abuse for several years, until she was 13 years old and in middle school. She also conceded that her story was not consistent during the investigation in California. Specifically, she told some people that the sexual abuse happened but told others that it did not. She admitted that her own family thought she was lying about the abuse. The complainant likewise conceded that law enforcement authorities concluded that there was no concrete evidence that her accusation was true, closed the investigation as unfounded, and returned her to her family's home. She also agreed that she had never previously told anyone that Fuller took her to motels, could not identify any of these motels by name, and could not say how Fuller explained these excursions to other family members. In addition, the complainant admitted that though she contended that the sexual abuse resumed once her family moved to Houston, she initially did not inform school authorities or law enforcement.

*3 The defense also sought to show that the video-recorded sex acts were consensual. Defense counsel asked the complainant if she recalled going downstairs and sitting on Fuller's lap in her bra and panties earlier that evening, but she denied doing so. She agreed that when Fuller returned, she did not cry out for help or fight him. She testified that she was three or four months from her seventeenth birthday at the time of the videotaped sex acts.

The State called several other witnesses who testified about the complainant's outcry in Texas and the ensuing investigation. Parrish and Adrian Woods, an assistant principal at the high school the complainant attended, both testified about the complainant's outcry and disclosure of the videotaped sex acts. Woods contacted law enforcement after the complainant disclosed the video. Both Woods and Parrish testified about the complainant's emotional state. Woods described the complainant as "in crisis" or "in distress" and possibly suicidal. Woods testified that the complainant "seemed happier at first" after disclosing the sexual abuse, but then "seemed like she got sad again" and "said she felt like hurting herself again." Parrish testified that the complainant "seemed happier" but still anxious afterward.

On cross-examination, defense counsel asked Parrish and Woods about the

complainant's prior accusation of sexual abuse in California. The trial court sustained some hearsay objections made by the prosecutor during defense counsel's interrogation of Woods as to whether the complainant's prior accusation of sexual abuse was determined to be unfounded, but Woods testified without objection that the complainant's mother told him that the complainant had made the prior accusation to get attention. Parrish testified that she too was aware of the California investigation and that child protective services had closed its investigation as unfounded.

The State also called the law enforcement officers who investigated the complainant's allegations. Deputy J. Vong testified that he made the "initial workup" of the case and then passed it on to the lead investigator, Deputy J. Cassidy. Cassidy arranged for the complainant and other witnesses to be interviewed. He also arranged for the complainant to have a medical examination. He personally interviewed her mother and Fuller. The audio recording of his interview with Fuller was played for the jury. In it, Fuller admitted to the videotaped acts.

On cross-examination, Cassidy acknowledged that the complainant's siblings—a 13–year–old sister and a 16–year–old brother—did not disclose any sexual abuse during their interviews. Cassidy also acknowledged that the complainant's mother informed him that her daughter had accused Fuller of sexually abusing her in California and that this accusation was investigated and determined to be unfounded. Cassidy conceded that he obtained child protective services records from California that memorialized this determination. The trial court sustained some hearsay objections made by the prosecutor during defense counsel's questioning of Cassidy about these records. But Cassidy testified that this prior investigation was closed as unfounded and that the records reflect this fact. With respect to Fuller's recorded interview, Cassidy agreed that Fuller stated he had made a mistake, but denied molesting the complainant since the age of seven. He also agreed that Fuller claimed that the complainant had set him up, initiating the sexual encounter by approaching him downstairs clothed only in her bra and panties.

*4 Finally, the State called Dr. Rohit Shenoi, the physician who interviewed and examined the complainant. Shenoi testified that the complainant reported "that she was depressed," "had frequent nightmares," and "was often sad and sometimes angry." Shenoi further testified that the complainant reported having "considered committing suicide and taken multiple pills two-days prior" and indicated that she had been cutting herself. According to Shenoi, the complainant also told her about Fuller's sexual abuse of her beginning at seven or eight years of age and stated that the abuse occurred many times. Shenoi stated that the complainant "seemed anxious" during the examination, and that his exam confirmed that the complainant had been cutting herself.

On cross-examination, Shenoi conceded that he did not know whether the complainant's allegations of sexual abuse were true. He also conceded that the findings of the medical exam were normal. Shenoi agreed that he could not draw any medical conclusion as to whether the complainant had sex; he could only say

that she did not have injuries resulting from sex.

In closing arguments, the prosecutor told the jury that "the evidence in this case is very overwhelming" and, without objection, that she was "sorry" the jury had to watch the video. The jury found Fuller guilty of both charged offenses.

*Punishment Phase of Trial*

Dr. Lawrence Thompson, a psychologist who counsels victims of sexual abuse, testified as an expert for the State. Over objection, Thompson testified that victims of sexual abuse often experience depression, anxiety, interpersonal difficulties, and sexual acting out. He testified that these symptoms are a response to trauma, and that suicidal thoughts also are a common response. Thompson also noted that it can be more difficult for children to cope with the trauma when the abuser is someone they know and trust, rather than a stranger. He also testified over objection that it "can be a lifelong process of working through their emotional fallout" for children abused by people they know. Thompson testified that it is common for victims of sexual abuse to delay in disclosing their abuse due to feelings of shame, fear, or guilt.

The prosecutor also tried to elicit testimony from Thompson about potential treatment options for sex offenders. Defense counsel objected that this subject was irrelevant. The trial court initially overruled the objection, and the following exchange occurred:

[Prosecutor]: Are there any psychopharmocological means of intervention for somebody who's a sex offender?

[Defense Counsel]: Objection, relevance.

[Court]: Overruled.

[Thompson]: There is nothing that we have in the way of psychopharmacologic intervention in the way of therapy and in the way of any other type of intervention that can cure someone of pedophilia.

[Defense Counsel]: Objection. That is outside the parameters of that question. It's nonresponsive.

[Court]: Sustained.

Defense counsel requested that the trial court instruct the jury to disregard Thompson's answer, and the trial court did so. Defense counsel moved for a mistrial, but the trial court denied the motion.

The prosecutor then sought to ask Thompson other questions about the curability or treatment of sex offenders, but the trial court sustained defense counsel's objections to these inquiries.

On cross-examination, Thompson agreed that his testimony was confined to "general principles." He acknowledged that he has not met or counseled the complainant, did not know whether she had experienced or exhibited any of the general behaviors that he had discussed in his testimony, and was unfamiliar with her medical history. He conceded that he did not know whether the complainant suffered from depression or anxiety, was acting out, or would suffer any long-term

effects from sexual abuse.

*5 Karen Parker, an employee of the sexual abuse unit of child protective services, also testified for the prosecution. Parker testified that the complainant was assigned as part of her caseload about a month after the complainant's outcry in Houston. Parker testified that the complainant had been placed in a mental hospital more than once due to severe depression and suicidal ideation. Parker stated that afterward the complainant remained "very sad" and still "came across as being very depressed." Parker testified that the complainant has been separated from her siblings and mother, that her mother has taken Fuller's side, and that the complainant was alone.

On cross-examination, Parker conceded that she was not a psychiatrist or medical doctor and agreed that being sympathetic to alleged victims of sexual abuse was part of her job. Parker also agreed that the complainant and her siblings were not completely cut off from one another and have had visits and contact. Parker did not dispute that child protective services in California concluded that there was no concrete evidence to support the accusation against Fuller and that the case was unfounded.

The State also put on proof that Fuller previously had been convicted of two felonies in California, one for possession of cocaine and another for possession for sale of cocaine base. The State then reoffered the proof introduced during the guilt/innocence phase of trial and rested.

The defense called both of the complainant's siblings as witnesses. The siblings both testified that Fuller was a good father and did not abuse them. Both siblings testified that the complainant did not have a good reputation for honesty. Both also testified that they informed the California authorities that they did not believe the complainant's prior accusation of sexual abuse against Fuller. Both asked the jury to exercise mercy or leniency in punishing Fuller.

The defense also called the complainant's mother as a witness. She testified that Fuller was a good father. She also testified that the complainant did not have a good reputation for honesty, that she informed the California authorities that she did not believe her daughter's prior accusation of sexual abuse, and that child protective services and other authorities in California concluded the accusation was unfounded. She asked the jury to have leniency despite the nature of the offense and stated that she believed that Fuller only had sex with her daughter on the one occasion on which it was videotaped.

In closing, the prosecutor argued for life imprisonment in part based on the impact of the offenses on the complainant. In addition to the prolonged duration of abuse and its adverse impact on the complainant's well-being, the prosecutor argued that the complainant's mother and siblings had sided with Fuller and left her "all alone." She noted that "this year is her senior year" and that "there's going to be nobody to take her out to dinner to celebrate" when she is accepted into college. Defense counsel objected that this was speculation, and the trial court sustained the objection. The trial court also instructed the jury to disregard "the last comment by the prosecutor," but denied the defense's motion for a mistrial. The prosecutor then

resumed her argument by stating, "Make no mistake about it. She is alone because of him."

During his closing, defense counsel asserted that this "trial has all been about what is going to be a fair sentence" and argued that life imprisonment was unfair given the discredited nature of the complainant's prior accusation and the isolated nature of the videotaped offenses. He also remarked on the law of parole in general and its application to Fuller in particular. He noted that the law mandates that a defendant serve at least half of any term of imprisonment imposed before becoming eligible for parole and argued that Fuller could serve "a lot more than half. He can do two-thirds, three-quarters or all of it." The prosecutor objected that defense counsel's argument about how long Fuller might be imprisoned before being paroled was improper, and the trial court sustained the objection. Defense counsel then argued that Fuller "can do whatever the parole board thinks fair. It's up to them, but for sure he's going to do one-half." The prosecutor again objected, and the trial court ruled that the "second part he just spoke of, it's overruled." Afterward defense counsel concluded without objection by arguing: "That's the law, one-half. So you can take that into consideration and you should absolutely."

*6 After deliberating, the jury found it was true that Fuller previously was convicted of two felonies in California. It assessed Fuller's punishment at confinement for life, and the trial court entered judgment on the verdicts.

*Fuller*, 2016 WL 1267912, at *1–6. Respondent has filed a Motion for Summary Judgment, to which Fuller has filed a response in opposition. The § 2254 proceeding is ripe for adjudication.

## III.  CLAIMS

Construing Fuller's claims and allegations broadly, he asserts the following claims:

Claim 1:     The state illegally enhanced his sentence with a 1988 two-year conviction in California to support a habitual criminal enhancement of his sentence.

Claim 2:     The state improperly used his 1997 California conviction for sales of less than a gram of cocaine to support a "habitual criminal enhancement" of his sentence, where such a conviction would be a state jail felony in Texas and, therefore, ineligible for enhancement purposes.

Claim 3:     The trial court abused its discretion when it allowed "unfounded"

California sexual abuse allegations to be used as extraneous offense evidence.

Claim 4:     The prosecution knowingly gave perjured testimony to the jury.

Claim 5:     Evidence that "exonerated" petitioner was used at the punishment phase of his trial.

Claim 6:     Trial Counsel rendered ineffective assistance when he failed to object to the sentence exceeding the statutory maximum.

Claim 7:     Trial Counsel rendered ineffective assistance when he failed to investigate evidence regarding the "habitual criminal" enhancement.

Claim 8:     Trial Counsel rendered ineffective assistance when he suppressed mitigating and exonerating evidence of the California Children and Family Services reports.

Claim 9:      Trial Counsel rendered ineffective assistance when he failed to object to inadmissible evidence.

Claim 10:    The cumulative effect of the trial errors violated petitioner's Fifth and Fourteenth Amendment rights.

Petition at 7-11; *see also* Memorandum, Docket Entry No. 1-1.

## IV.    <u>STANDARD OF REVIEW</u>

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276 (5th Cir.1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant

probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.,* 37 F.3d 22 4, 227 (5th Cir.1994).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 27 4 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence.  *See Harrington v. Richter,* 562 U.S. 86, 103 (2011)  (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions").  AEDPA, codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review.  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter,* 562 U.S. at 98.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99.  For AEDPA to apply, a state court

need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits." *Id*. at 98-99.

The Texas Court of Criminal Appeals adjudicated the petitioner's his claims on direct appeal and habeas review. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id*. ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id*. (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has

been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id*. at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id*.

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992).

## V.   DISCUSSION

### A.   Procedurally Barred Claims

Respondent argues that Fuller is procedurally barred from raising his first five claims regarding the following alleged trial court errors: (1) using a 21-year-old conviction from California for enhancement purposes; (2) using what he claims amounts to a "state jail felony" for enhancement purposes; (3) allowing "unfounded" California sexual abuse allegations to be used as extraneous offense evidence; (4) allowing the prosecution to present perjured testimony; and (5) allowing evidence that "exonerated" petitioner to be used at the punishment phase of his trial. The state habeas court found that these five claims were "record claims" should have been raised on direct appeal and not on habeas review.[5]   The Texas Court of Criminal Appeals

---

[5] *See* State Habeas Corpus Record in *Ex parte Fuller*, WR-86,342-01, Docket Entry Nos. 11-36 & 11-37, [hereinafter SHCR-1] at 78-79, 83; State Habeas Corpus Record in *Ex parte Fuller*, WR-86,342-02, Docket Entry Nos. 11-39 & 11-40 [hereinafter SHCR-2] at 82-83, 87 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Rojas*, 981 S.W.2d 690 (Tex. Crim. App. 1998)

adopted the state habeas court's findings in each application when it denied those applications without written order.[6]

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker,* 501 U.S. 797, 802–04 (1991). It is well settled under Texas jurisprudence that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Crim. App. 1991). Federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal. *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005).

Where, as in this case, a state court has expressly rejected a state prisoner's claims on an independent and adequate state procedural ground, the claims are precluded from federal habeas review. *Rocha v. Thaler,* 619 F.3d 387, 400 (5th Cir. 2010). The prisoner may not overcome the procedural default unless he establishes either cause and prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Williams v. Thaler,* 602 F.3d 291, 307 (5th Cir. 2010); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

---

(Baird, J., concurring)).

[6] *See Ex parte Fuller*, WR-86,342-01 (Tex. Crim. App. Mar. 8, 2017), at Action Taken Sheet (Docket Entry No. 11-35); *Ex parte Fuller*, WR-86,342-02 (Tex. Crim. App. Apr. 5, 2017), at Action Taken Sheet (Docket Entry No. 11-38).

Fuller does not contest that his claims are procedurally defaulted, but argues that he overcomes the default based on the "cause and prejudice" or "miscarriage of justice" exceptions.[7] Fuller alleges that there was a miscarriage of justice because his two prior convictions in California should not have been considered for enhancement purposes, and, therefore, the enhancement was not authorized by law. He also contends that he established cause and prejudice because he claims that the state courts' rulings were contrary to clearly established federal law.[8]

In order to overcome a procedural default, Fuller must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, which requires the petitioner to supplement his constitutional claim with a colorable showing of actual innocence. *Sawyer v. Whitley,* 505 U.S. 333, 335-36 (1992). "The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard." *United States v. Sorrells,* 145 F.3d 744, 749 n. 3 (5th Cir.1998). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *United States v. Torres,* 163 F.3d 909, 912 (5th Cir.1999). To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir.1999) (quoting *Schlup v. Delo,* 513 U.S. 298, 321 (1995)). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts,

---

[7] *See* Docket Entry No. 14 ("Response") at 5, 11.

[8] *Id.* at 11.

and certain physical evidence." *Id.*

Construing Fuller's claims liberally, he maintains that he is actually innocent of the habitual offender conviction that enhanced his sentence to life imprisonment because he claims that the 1988 California conviction was too remote in time to be considered and that the 1997 California conviction would only be considered a state jail felony under Texas law, and, therefore, those prior convictions are ineligible to be considered for enhancement purposes. These arguments are not new evidence and could have been raised on direct appeal. Fuller does not present any new or reliable evidence to establish factual innocence and makes no showing of cause and prejudice for his failure to raise these claims on direct appeal. Because Fuller does not establish actual innocence, he does not fall into the "severely confined category" of cases where courts have permitted an exception to a procedural default. *See McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013). Accordingly, Claims 1-5 must be dismissed as procedurally barred.[9]

### B. Ineffective Assistance of Counsel Claims

The Constitution guarantees a fair trial for criminal defendants through the Due Process Clause, but the basic elements of a fair trial are defined largely by the Sixth Amendment, which conveys the right to have the effective assistance of counsel. *See* U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685 (1984); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (observing that "the right to counsel is the right to the effective assistance of counsel"). Claims for ineffective assistance of counsel are analyzed under the following two-prong standard:

First, the defendant must show that counsel's performance was deficient. This

---

[9] As Respondent points out, even if these first five claims were not subject to a procedural bar, they are meritless, as discussed *infra*, §§ V.B.1-4, regarding Fuller's ineffective assistance of counsel claims.

> requires showing that counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Thus, to prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006).

To prove prejudice, the second prong under *Strickland*, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Fuller contends that trial counsel rendered ineffective assistance by: (1) failing to object to the sentence exceeding the statutory maximum (Claim 6); (2) failing to investigate evidence regarding the "habitual criminal" enhancement (Claim 7); (3) suppressing mitigating and exonerating evidence of the California Child Protective Services ("CPS") reports (Claim 8); and

(4) failing to object to inadmissible evidence (Claim 9). Respondent contends that Fuller's claims fail on the merits because Fuller cannot establish both prongs under *Strickland* and that the state court's adjudication of these claims is not contrary to, or an unreasonable application of federal law or an unreasonable determination of the facts based on the record.

### 1. Failure to Object to Sentence (Claim 6)

As noted, the state habeas court found that the fifteen-year look back limitation prescribed by the United States Sentencing Commission, *Guidelines Manual*, §4A1.2(e), which is the basis for Fuller's claim regarding his 1988 conviction, has no applicability to Fuller's case.[10] The state habeas court also found that Fuller's sentence was properly increased pursuant to the habitual offender statute and that Fuller's life sentence fell within the range prescribed by the Texas legislature for habitual offenders.[11] The habeas court further found that Fuller failed to show that trial counsel was deficient for failing to object to the sentence and concluded that Fuller failed to show that trial counsel's conduct fell below an objective standard of reasonableness.[12]

Texas law provides that prior felony convictions, even in other states, may be considered as enhancements to a sentence under the repeat and habitual offender statute. *See* Tex. Penal Code §§ 12.41, 12.42. Unlike the federal Sentencing Guidelines, which do not apply here, Texas does not have a 15-year look back or rule of remoteness limiting the use of a prior conviction for enhancement purposes. *Hicks v. State,* 545 S.W.2d 805 (Tex. Crim. App. 1977); *Loud v. State,* 499 S.W.2d 295, 298 (Tex. Crim. App. 1973). Accordingly, there is no merit to Fuller's

---

[10] SHCR-1 at 80; SHCR-2 at 84.

[11] SHCR-1 at 80; SHCR-2 at 84.

[12] SHCR-1 at 80, 83; SHCR-2 at 84, 87.

contention that his 1988 conviction was not valid for enhancement purposes under Texas law. Moreover, the state habeas court's determination that the 1988 California conviction was valid for enhancement purposes is a matter of state law, and issues of state law are not cognizable on federal habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations of state law questions.").

Because there is no merit to Fuller's claim that his 1988 conviction should not have been considered as an enhancement, any objection to its inclusion in the sentencing proceedings would have been futile. "Counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The "failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (trial counsel's failure to object to the admission of extraneous offenses during the penalty phase, where such evidence is generally admissible, was not ineffective assistance of counsel). Fuller does not show that the state habeas court's determination that counsel was not deficient regarding his sentence was contrary to, or an unreasonable application of federal law or an unreasonable determination of facts based on the record. Accordingly, he is not entitled to habeas relief on Claim 6.

## 2. Failure to Investigate (Claim 7)

Fuller also complains that trial counsel was ineffective for failing to investigate his 1997 California conviction for the sale of cocaine, which he claims would have been considered a state jail felony, rather than a felony, such that it was invalid as an enhancement.

The state habeas court found that Fuller was sentenced to three years' imprisonment for

his 1997 conviction.[13]   The state habeas court further found that a three-year sentence for a controlled substance is classified as a felony of the third degree for punishment purposes under the Texas Penal Code.  *See* Tex. Penal Code § 12.41(1).[14]   The state habeas court also found that Fuller failed to show what further investigation by trial counsel would have revealed, and concluded that Fuller failed to show that trial counsel's conduct fell below an objective standard of reasonableness or that, but for trial counsel's allegedly deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.[15]

A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).  Fuller does not show what trial counsel's investigation into his California 1997 drug conviction would have revealed that would have changed the determination by the trial court regarding the validity of the 1997 conviction for enhancement purposes.  Therefore, Fuller does not show that the state habeas court's determination that counsel was not deficient regarding investigating his prior convictions was contrary to, or an unreasonable application of, federal law or an unreasonable determination of facts based on the record.  Accordingly, he is not entitled to habeas relief on Claim 7.

### 3.    Suppression of Mitigating or Exonerating Evidence (Claim 8)

Fuller claims that trial counsel was deficient for failing to offer into evidence the California CPS records that show that the charges made against him in California for child

---

[13] SHCR-1 at 80-81; SHCR-2 at 84-85.

[14] SHCR-1 at 81; SHCR-2 at 85.

[15] SHCR-1 at 81, 83-84; SHCR-2 at 85, 87-88.

sexual abuse were "unfounded." The state habeas court found that Fuller failed to show that these records would have been admissible under any exception to the hearsay rule.[16] The habeas court further found that trial counsel elicited testimony from the complainant and five other witnesses who all testified that the California CPS had concluded that the complainant's earlier accusations were unfounded.[17] The state habeas court also found that Fuller failed to show that trial counsel erred or that his error caused Fuller actual prejudice, and the habeas court concluded that Fuller failed to show that trial counsel's performance fell below an objective standard of reasonableness under *Strickland*.[18]

Fuller does not controvert the state habeas court's conclusion that no exception to the hearsay rule would have allowed the admission of the CPS records at trial, nor does he show that such omission resulted in any actual prejudice, where the record establishes that numerous witnesses testified that the California CPS determined that the earlier accusations were unfounded. Through this testimony, trial counsel introduced evidence that would apprise the jury that the accusations were unfounded. Fuller does not show that trial counsel's decision not to offer the physical CPS records into evidence caused him actual prejudice.

The state habeas court rejected Fuller's ineffective assistance of trial counsel claims regarding this issue on the merits, and Fuller has not shown that the state court's factual determination was unreasonable based on the record as a whole, nor does he show that its legal conclusion that trial counsel's assistance was constitutionally sufficient was contrary to, or an unreasonable application of, *Strickland*. Accordingly, Fuller does not establish his entitlement to

---

[16] SHCR-1 at 81; SHCR-2 at 85.

[17] SHCR-1 at 81; SHCR-2 at 85.

[18] SHCR-1 at 82, 83; SHCR-2 at 86, 87.

relief on Claim 8.

### 4. Failure to Object to Extraneous Offenses (Claim 9)

Fuller claims that trial counsel was ineffective for failing to object to the admission of the "unfounded" California accusations by the complainant when she testified about the incidents in California and when the prosecutor mentioned to the jury in her opening statement and closing argument that the sexual abuse had been ongoing for years. The state habeas court found that under Texas law, a child victim of sexual abuse may testify not only to the acts charged in the indictment, but also to other crimes, acts, or wrongs committed by the defendant against the victim. *See* Tex. Crim. Proc. Code art. 38.37 § 2.[19] The state habeas court further found that Fuller failed to show that trial counsel was deficient for failing to object to admissible evidence.[20]

As noted previously, counsel is not deficient for failing to make meritless objections. *Koch*, 907 F.2d at 527; *Clark*, 19 F.3d 966. Texas law allows a child victim of sexual abuse to testify regarding other crimes or acts the defendant committed against her. *See* Tex. Crim. Proc. Code art. 38.37 § 2. Because that evidence was admissible, Fuller fails to show that any objection to its admission would have been sustained. Accordingly, Fuller does not show that the state habeas court's factual determination was unreasonable based on the record as a whole, nor does he show that its legal conclusion that trial counsel's assistance was constitutionally sufficient was contrary to, or an unreasonable application of, *Strickland*. Accordingly, Fuller does not establish his entitlement to relief on Claim 9.

---

[19] SHCR-1 at 82; SHCR-2 at 86.

[20] SHCR-1 at 82; SHCR-2 at 86.

## C.      Cumulative Error (Claim 10)

Fuller claims that the cumulative effect of the alleged errors in his trial and sentencing requires that the Court grant him habeas relief.  The state habeas court found that Fuller merely restated all of his previous grounds for relief in this ground.[21]  As set forth above, Fuller fails to establish any constitutional error concerning his trial, conviction, or sentencing.  Because he does not show any errors, his claim for cumulative error necessarily fails.  *See United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir.1992) ("Because we find no merit to any of [petitioner's] arguments of error, his claim of cumulative error must also fail").  Moreover, the Fifth Circuit has repeatedly rejected allegations of cumulative error that are unaccompanied by a valid ineffective-assistance claim.  *See Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (acknowledging that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised"); *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) ("Federal habeas relief is only available for cumulative errors that are of a constitutional dimension."); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (stating that, because certain alleged errors were not of constitutional dimension and because others were meritless, the petitioner had "presented nothing to cumulate"); *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) ("Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.").  Because Fuller has failed to establish a valid ineffective-assistance claim against his trial counsel, or any other claim regarding trial or sentencing error, he is not entitled to federal habeas corpus relief based on cumulative error, and

---

[21] SHCR-1 at 82; SHCR-2 at 86.

Claim 10 must be dismissed.

## VI.　CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, this court concludes that jurists of reason would not debate whether any procedural or substantive ruling in this case was correct or whether the petitioner states a valid claim for relief. Therefore, a certificate of appealability will not issue.

## VII.　CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Docket Entry No. 10) is

**GRANTED**.

2.      The habeas corpus petition is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 12th day of June, 2018.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE